KAREN L. LOEFFLER
United States Attorney

THOMAS C. BRADLEY
Assistant U.S. Attorney
ERIN S. MELLEN
Trial Attorney, Tax Division
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: Thomas.Bradley@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:14-cr-00020-RRB |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S TRIAL BRIEF** |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES R. BACK, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  <u>STATUS OF CASE</u>

Trial is scheduled to begin on Monday, September 29, 2014.  Plaintiff is

represented by Assistant U.S. Attorney Thomas C. Bradley of the United States

Attorney's Office for the District of Alaska, and by Trial Attorney Erin S. Mellen of

the United States Department of Justice, Tax Division, Western Criminal

Enforcement Section.  The defendant is appearing pro se.  Assistant Federal

Defender Jamie McGrady was appointed as standby counsel.

Discovery has been provided by the United States. Reciprocal discovery has been requested, but none has been provided. Copies of the government's trial exhibits will be provided to the defendant at the final pretrial conference, scheduled for September 25. The United States expects its case-in-chief to take approximately two days, and it is reasonable to expect that the evidence in the prosecution's case will have been presented by Tuesday afternoon or Wednesday morning. The defendant has indicated in court that he does not plan to present evidence.

## II.   STATEMENT OF FACTS

Defendant James R. Back has been employed for over thirty years by Alyeska Pipeline Service Company (Alyeska) as a pipeline technician. Alyeska personnel records to be offered at trial will establish that the defendant earned following wages during the prosecution years:

| Year | Gross Wages | Taxable Wages | 401k Contribution |
|------|-------------|---------------|-------------------|
| 2006 | $149,214.02 | $127,910.92 | $20,000.00 |
| 2007 | $145,818.34 | $123,973.46 | $20,500.00 |
| 2008 | $151,806.52 | $129,795.88 | $20,500.00 |
| 2009 | $148,507.55 | $125,031.73 | $22,000.00 |
| 2010 | $149,568.41 | $125,672.27 | $22,000.00 |
| 2011 | $162,931.93 | $138,837.23 | $22,000.00 |
| 2012 | $156,973.93 | $132,466.85 | $22,500.00 |
| Total: | $1,064,820.70 | $903,688.34 | $149,500.00 |

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 2 of 24

**Count 1: Filing False 2006 Tax Return**

Defendant did not file a timely 2006 U.S. Individual Income Tax Return Form 1040.[1]  Instead, he filed a delinquent return which was purportedly signed on August 15, 2007, but was not received by the IRS until April 12, 2008.  The envelope was postmarked Soldotna, Alaska on April 9, 2008.

This return claimed that Back had earned "0" wages in 2006 and demanded a refund of withholdings in the amount of $38,482.  Thus included the federal tax that had been withheld and paid over to the U.S. Treasury by Alyeska, as well as the social security and Medicare taxes withheld.  On May 16, 2008, the IRS issued a refund check to Back in the amount of $33,001.02.[2]  Back endorsed the check and deposited it to his E*Trade account.  The balance in his E*Trade checking account at the end of 2006 was approximately $235,000.

**Count 2: Filing False 2007 Tax Return**

The Defendant filed a timely 2007 Form 1040 on or about April 14, 2018. Back again claimed "0" wages on this return, and requested a refund in the amount of $34,968, which again included taxes, social security, and Medicare payments withheld by Alyeska and paid over to the U.S. Treasury.  On May 23, 2008, the IRS issued a refund check to Back for that amount, $34,968.  Back endorsed the check and deposited it to his E*Trade account.  The balance in this account at the end of

---

[1] He did file a timely extension, with which he made a payment of $1527 by check.
[2] The lower amount reflects a deduction for taxed Back owed from 2002.

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 3 of 24

2007 was approximately $235,000. During 2007, Back purchased approximately $42,000 in gold and silver coins from Bullion Direct.com, an internet precious metals retailer and broker located in Texas.

In July 2009, Back received notice for the IRS that the false statements in his 2007 return had been identified. Back was informed that he owed $29,694 in 2007 taxes, plus penalties and interest, based on the discovery that Back had reported "0" wages, when in fact he had earned $123,973 from Alyeska. A Statutory Notice of Deficiency was sent to Back in October 2009, and he appealed, with no success. Back filed a petition in United States Tax Court in January 2010.

Trial was held in Palmer, Alaska on June 13, 2011, before Judge Juan Vasquez. Back agreed that he received $123,973 from Alyeska in 2007, but denied that he had to pay taxes on the money. He also stated "they don't have any proof that I received any money from Alyeska…." Back argued that the proof that he received money from Alyeska in 2007 was all "hearsay." He denied being a "taxpayer" and claimed that the income was not taxable. The defendant admitted that he had learned the information he was arguing from the internet, among other places.

The judge informed Back that he was wrong, and that his arguments were frivolous. On July 18, 2011, the judge issued an opinion, holding that Back's arguments were "frivolous and groundless" and ordering that the deficiency of

$29,694 be paid, along with a penalty of $7,567. Back has never paid the deficiency. His appeal to the Ninth Circuit was dismissed as untimely. *Back v. C.I.R.,* Case No. 11-73243 (9th Cir. Nov. 15, 2011).

**Count 3: Filing False 2008 Tax Return**

The defendant filed a timely 2008 Form 1040, signing it on April 12, 2009. He again reported "0" wages, and demanded a refund of $36,661, to include all withholding of taxes, social security, and Medicare payments. On May 15, 2009, the IRS issued a refund check for $36,661, which Back endorsed and deposited to his E*Trade account.[3] At the end of the year 2008, the balance in this account was approximately $133,000. During 2008, Back purchased approximately $156,000 in gold and silver coins from Bullion Direct

**Count 4: Failure to File 2009 Tax Return**

Back failed to file a Form 1040 for the tax year 2009, despite earning $125,031.73 from Alyeska, in addition to other income, including his Alaska PFD and investment income. During 2009, Back purchased approximately $99,000 in gold and silver coins from Bullion Direct.

**Count 5: Failure to File 2010 Tax Return**

Defendant failed to file a Form 1040 for the tax year 2010, despite earning $125,672 from Alyeska.

---

[3] Back also received a $300 "stimulus" check dated May 30, 2008.

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 5 of 24

During 2010, Back purchased approximately $60,000 in gold and silver coins from Bullion Direct.

## Count 6: Failure to File 2011 Tax Return

Defendant failed to file a Form 1040 for the tax year 2011, despite earning $138,837 from Alyeska.

In an account application with E*Trade, dated in March 2012, just before the 2011 return was due, Back acknowledged that he was employed by "Alyeska Pipeline," that he earned annual income of between "$100,000 - $199,999," that his liquid net worth was "$500,000  -$999,999," that his total net worth was "$500,000 - $999,999," that he was a "US Citizen" and that his country of legal residence was the "United States."

On March 29, 2012, Back opened two new accounts at E*Trade.  He deposited over $26,000 into a portfolio that included investments in U.S. Treasury bills.  The same day, he also opened an Individual Retirement Account with a transfer of over $36,000, investing in income securities including U.S. Treasury notes and bonds and other government securities.

During 2011, Back purchased approximately $52,000 in gold and silver coins from Bullion Direct.

## Count 7: Failure to File 2012 Tax Return

Defendant failed to file a Form 1040 for the tax year 2012, despite earning $132,466 from Alyeska.

In an account application with E*Trade, dated December 28, 2012, Back acknowledged that he was employed by "Alyeska Pipeline," that he earned annual income of between "$100,000 - $199,999," that his liquid net worth was "$200,000 - $499,999," that his total net worth was "$1,000,000+," that he was a "US Citizen" and that his country of legal residence was the "United States."

During 2012, Back purchased approximately $20,000 in silver coins from Bullion Direct. As described in the notice filed pursuant to Fed. R. Evid. 404(b), Back also failed to file his 2013 return.

## III.  STATUTES, ELEMENTS, AND PENALTIES

### A.  Elements of the Offenses

The Indictment charges the defendant with three counts of Making and Subscribing a Materially False Tax Return, in violation of Title 26, United States Code, Section 7206(1). In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant made and signed a tax return for the years 2006, 2007, and 2008 that he knew contained false information as to a material matter;
> Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and
> Third, in filing the false tax return, the defendant acted willfully.
> A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.

Ninth Circuit Model Criminal Jury Instruction 9.39.

False information is material if it had a natural tendency to influence or was capable of influencing or affecting the ability of the IRS to audit or verify the accuracy of the tax return or a related return. *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (material statement has a "natural tendency to influence, or [be] capable of influencing, the decision of the decision making body to which it was addressed") (quoting *Kungys v. United States,* 485 U.S. 759, 770 (1988)); *see also United States v. Peterson*, 538 F.3d 1064, 1067 (9th Cir.2008) (district courts should instruct on materiality "tracking the language" of *Gaudin*).

The fact that an individual's name is signed to a return, statement, or other document shall be prima facie evidence for all purposes that the return, statement, or other document was actually signed by him. 26 U.S.C. § 6064.

The defendant is also charged in the Indictment with four counts of Willful Failure to File an Income Tax Return, in violation of Title 26, United States Code, Section 7203. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant was required to file a return for the calendar year ending December 31, 2009, 2010, 2011, and 2012;
> Second, the defendant failed to file an income tax return by the due date as required by Title 26 of the United States Code; and
> Third, in failing to do so, the defendant acted willfully.

Ninth Circuit Model Criminal Jury Instruction 9.38.

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 8 of 24

In order to prove that the defendant acted "willfully," the government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated that duty.

> A defendant who acts on a good faith misunderstanding as to the requirements of the law does not act willfully even if his understanding of the law is wrong or unreasonable. Nevertheless, merely disagreeing with the law does not constitute a good faith misunderstanding of the law because all persons have a duty to obey the law whether or not they agree with it. Thus, in order to prove that the defendant acted willfully, the government must prove beyond a reasonable doubt that the defendant did not have a good faith belief that he was complying with the law.

Ninth Circuit Model Criminal Jury Instruction 9.42.

Sections 7203 and 7206 of the Internal Revenue Code use the term "willfully." In *Cheek v. United States*, 498 U.S. 192, 201 (1991), the Supreme Court set forth the following definition: "Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." This same definition applies equally to all tax offenses, misdemeanors and felonies alike. *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (citing *United States v. Bishop*, 412 U.S. 346, 359–60 (1973)). "In other words, if you know that you owe taxes and you do not pay them, you have acted willfully." *United States v. Easterday*, 564 F.3d 1004, 1006 (9th Cir.2009). In a failure to file tax return prosecution, the government is not required to prove an intent to evade or defeat a tax, but may instead prove an

intent to disobey or disregard the law, which may be the intent not to file a return, rather than the intent to evade or defeat a tax. *United States v. Meredith*, 685 F.3d 814, 826 (9th Cir.2012).

A defendant's views regarding the validity of a tax statute is irrelevant to the issue of willfulness and, if heard, the jury should be instructed to disregard such views. *Cheek*, 498 U.S. at 202. See also *United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir.1992) (no plain error to instruct that "mere disagreement with the law, in and of itself, does not constitute good faith misunderstanding under the requirements of law  [b]ecause it is the duty of all persons to obey the law whether or not they [agree with it].")  Willfulness is a state of mind that may be established by evidence of fraudulent acts. *United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir.1981); *United States v. Conforte,* 624 F.2d 869, 875 (9th Cir.1980).

Proof of willfulness in a criminal tax case may be, and usually is, shown by circumstantial evidence alone. *See United States v. Marabelles*, 724 F.2d 1374, 1379 (9th Cir. 1984) (listing acts from which willfulness can be inferred in evasion case); *United States v. Tucker,* 133 F.3d 1208, 1218-19 (9th Cir. 1998) (false returns).  A defendant's past taxpaying history is admissible to prove willfulness circumstantially. *United States v. Schiff*, 612 F.2d 73, 77-78 (2d Cir. 1979) (proof of willfulness included previously filed corporate and personal returns and reminder by accountant).  This may include years prior or subsequent to the prosecution period. *United States v. Upton*, 799 F.2d 432, 433 (8th Cir. 1986).

## B.    Penalties Upon Conviction

Upon conviction of each of Counts 1, 2, or 3, the defendant is subject to a maximum term of imprisonment of three years, a maximum $250,000 fine, a term of supervised release not to exceed one year, and costs of prosecution.  26 U.S.C. 7206; 18 U.S.C. 3571(b)(3);  18 U.S.C. 3583(b)(3).

Upon conviction of each of Counts 4, 5, 6, or 7, the defendant is subject to a maximum term of imprisonment of one year, a maximum $100,000 fine, a term of supervised release not to exceed one year, and costs of prosecution.  26 U.S.C. 7203; 18 U.S.C. 3571(b)(5); 18 U.S.C. 3583(b)(3).

Costs of prosecution must be imposed by the court in the event of a conviction under either Section 7203 or Section 7206.  "[T]the 'grammatical structure of the statute and the use of the word "shall" compel the conclusion that the provision is mandatory.'"  *United States v. Fowler*, 794 F.2d 1446, 1450 (9th Cir. 1986) *quoting United States v. Chavez*, 627 F.2d 953, 954-55 (9th Cir. 1980). Applicable costs are listed at Title 28, United States Code, Section 1920.

## IV.   <u>EVIDENTIARY ISSUES</u>

### A.    Willfulness

Willfulness has been defined by the courts as a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 200-01 (1991); *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Bishop*, 412 U.S. 346, 360 (1973).  Therefore, in order to establish willfulness, the

government must establish that the defendant was aware of his obligations under the tax laws. When determining whether a defendant has acted willfully, the jury must apply a subjective standard; thus a defendant asserting a good faith defense is not required to have been objectively reasonable in his misunderstanding of his legal duties or belief that he was in compliance with the law. *Cheek*, 498 U.S. at 202-03; *United States v. Powell*, 955 F.2d 1206, 1211-12 (9th Cir. 1992).

Although *ignorance* and *misunderstanding* of the law may be asserted in an attempt to negate willfulness, *disagreement* with the constitutional validity of the law may not. Once it has been established that the defendant was aware of a legal duty and intentionally violated that duty, it is no defense that the defendant believed that the law imposing the duty was unconstitutional. *Cheek*, 498 U.S. at 204-06. The constitutionality of the tax laws is to be litigated by taxpayers in other ways established by Congress. *Id*. at 206.

To prove willfulness, the government must show that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty. *Id*. at 201. Willfulness is rarely subject to direct proof and must generally be inferred from the defendant's acts or conduct. *United States v. Marabelles*, 724 F.2d 1374, 1379 (9th Cir. 1984).

**B.    Summary Witness**

Near the end of its case, the government expects to call an expert or summary witnesses trained in taxation and accounting. This witness will provide an analysis

of the financial records introduced into evidence and explain the tax consequences of the evidence, including whether or not Back earned wages or was entitled to the refunds claimed for 2006-08, and whether he earned enough gross income to require him to file a return in the later years.

The Federal Rules of Evidence authorize the use of an expert witness if it "will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed. R. Evid. 702. The courts have traditionally allowed summary expert testimony in tax prosecutions. *United States v. Baker*, 10 F.3d 1374, 1411 (9th Cir. 1990). The qualifications of the witness have been provided in compliance with the rules.

### C.     Summaries

Federal Rule of Evidence 1006 permits the introduction of  summaries of voluminous evidence.  In this case, Special Agent Kelly Key is expected to testify that she prepared summaries of the records of E*Trade, Alyeska Pipeline Service Company, Bullion Direct, and Bank of America which will assist the jury in the case.  All of the records on which the summaries are based will be available in court and in fact offered in evidence.

### D.     Charts

The Government intends to use demonstrative charts during its opening statement, during examination of witnesses, and in closing argument.  The Ninth Circuit has consistently approved the use of charts. *United States v. Soulard*, 730

F.2d 1292, 1300 (9th Cir. 1984); *United States v. Johnson*, 594 F.2d 1253 (9th Cir. 1979). The proposed jury instructions address the consideration of charts and summaries.

## V.     POTENTIAL DEFENSES

The United States asks the Court to exclude arguments, exhibits, and testimony regarding matters which are irrelevant to the factual determinations to be made by the jury in the instant case and which will also be substantially more prejudicial than probative. Based on the defendant's pretrial motions, the government anticipates that the defendant will try to present legal arguments and evidence regarding his assertion that the prosecution must present "evidence" from "witnesses" with "personal knowledge" that "the constitution and the code apply to" the defendant.

Such exhibits, testimony, and arguments constitute incorrect statements of the law and invade the province of the Court to instruct the jury on the law. Allowing such arguments and evidence will confuse the jury as to their true role of determining the factual issues before them as opposed to making determinations on the law. The United States respectfully asks the Court, therefore, to limit the jury's exposure to arguments that are not relevant to the factual issues the jury must decide. The United States seeks to prevent the defense from arguing or presenting evidence regarding incorrect interpretations of the law; self-serving hearsay; or speculation from witnesses regarding the contents of the defendant's mind.

## A. Defendant Should Not Offer Incorrect Interpretations of the Law During Opening Statement and Closing Arguments.

As a preliminary matter, the courts have made it clear that a defendant should not be allowed to confuse the jury with incorrect interpretations of the law, including the Constitution, the Internal Revenue Code, and Treasury regulations.

"In our judicial system the court instructs the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts. The law is neither introduced as evidence nor presented through witnesses at trial." *United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979). Moreover, "it is within the sole province of the court 'to determine the applicable law and to instruct the jury as to that law.'" *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) (*quoting In re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996); *see also United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) ("It is the district court's peculiar province to instruct the jury on the law . . . ."). "The law is given to the jury by the court and not introduced as evidence . . . . Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be . . . . Juries only decide facts, to which they apply the law given to them by the judge." *United States v. Willie*, 941 F.2d 1384, 1396 (10th Cir. 1991) (quoting numerous cases, including *Cooley v. United States*, 501 F.2d 1249, 1253-54 (9th Cir. 1974)) (internal citations omitted).

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 15 of 24

The defendant's arguments must be limited to the facts presented during trial and the instructions given by this Court. The defendant is permitted to argue that he lacked the requisite willfulness to commit the crimes with which he is charged, based upon a good faith misunderstanding of his duty under the law. *See Cheek v. United States*, 498 U.S. 192, 202 (1991) (government required to rebut claim of good faith misunderstanding or ignorance of the law); *United States v. Whiteside*, 810 F.2d 1306, 1311 (5th Cir. 1987) (approving of jury instruction stating that "[t]he defendant's conduct is not willful if he acted through negligence, inadvertence, justifiable excuse, mistake, or due to his good faith misunderstanding of the requirements of the law."). A disagreement with the law, however, is not a defense to the crimes alleged in the indictment since one has to know what the law is in order to disagree with it. The defendant is not permitted to blur the line between factual evidence about his state of mind and the actual law. *See* Fed. R. Evid. 103(c).

Moreover, if the defendant interjects into the proceedings his disagreements with the law, the Supreme Court in *Cheek* indicated that it would be proper for the Court to issue an instruction to disregard them. *Cheek*, 498 U.S. at 206. A reading of the language of *Cheek* supports the following instruction:

> A person's opinion or belief that the tax laws are invalid or violate his constitutional rights is not a defense to the crime charged in this case. Mere disagreement with the law does not constitute a good faith misunderstanding of the requirements of the law, because it is the duty of all persons to obey the law whether or not they agree with it. Any

evidence that you have heard to the contrary in this regard is irrelevant and should be ignored.

*See Cheek*, 498 U.S. at 202-206. If the defendant has legal arguments regarding the interpretation of the Internal Revenue Code, he can present such arguments to the Court in a trial brief or through proposed jury instructions. The Court can then determine the law and present it to the jury after all evidence has been presented.

## B. Defendant Should not be Permitted to Present Irrelevant Evidence to the Jury

Under the Federal Rules of Evidence, the jury shall not be exposed to inadmissible evidence. Fed. R. Evid. 103(c). "[E]vidence which is not relevant is not admissible." Fed. R. Evid. 402. "Relevant evidence," moreover, is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The primary issue in this case will be the defendant's willfulness. Thus, the relevance of most evidence will depend on how probative it is of the Defendant's state of mind. The Defendant likely will argue that certain evidence is necessary to demonstrate that he held a good faith belief that he was not required to file his 2009 through 2012 tax returns, and that he honestly believed he was entitled to a full refund of all federal income, social security, and Medicare taxes paid for the 2006, 2007, and 2008 years. The defendant, however, is only permitted to introduce

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 17 of 24

*factual* evidence upon which he relied during those years to form his opinions about the tax laws.

Thus, evidence presented by the defendant in support of his interpretation of the law should be excluded, unless the defendant lays a proper foundation to reveal: (1) the evidence was seen prior to the Defendant forming his beliefs (as opposed to after the beliefs were already formed); (2) an explanation of how such evidence helped form his beliefs in order to prove such information was relied upon by the defendant and was instrumental in forming his views; and (3) the evidence is not self-serving hearsay which the defendant helped create in support of his already existing beliefs.

A document or conversation is not relevant to the defendant's state of mind unless he relied upon it in making his decision to claim refunds or to not to file tax returns. Moreover, such conversations and documents are only relevant if the defendant was exposed to them prior to the date he committed the crime. Furthermore, only the defendant can lay the proper foundation for the above-mentioned evidence, and he must do it by testifying in court; from the witness stand, not the podium.

### C. Defendant Cannot Introduce Evidence of his Beliefs Through Hearsay Testimony by Government or Defense Witnesses

It is not permissible for either government or defense witnesses to express their opinion as to what the defendant purportedly believed as this calls for

speculation regarding the true contents of the defendant's mind. The issue of whether the defendant truly believed, albeit mistakenly, that he was not required to file tax returns and pay income taxes is an ultimate issue of fact, for the jury alone to decide. *See United States v. Hauert*, 40 F.3d 197, 201-202 (7th Cir. 1994) ("by the nature of a tax protestor case, defendant's beliefs about the propriety of his filing returns and paying taxes, which are closely related to defendant's knowledge about tax laws and defendant's state of mind in protesting his taxpayer status, are ordinarily not a proper subject for lay witness opinion testimony absent careful groundwork and special circumstances . . . "); *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) (witness testimony regarding a defendant's observations, what the defendant was told, and what the defendant said or did "will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew."); *United States v. Phillips*, 600 F.2d 535, 538-539 (5th Cir. 1979) (opinion of lay witness that defendant indicated he "understood" what he was doing gave no objective basis for jury to determine defendant's state of mind).

### D.     Reliance on Counsel

A defendant who reasonably relies on the advice of counsel may "not be convicted of a crime which involves willful and unlawful intent." *Williamson v. United States*, 207 U.S. 425, 453 (1908). Advice of counsel is not a separate and distinct defense but rather is a circumstance indicating good faith which the trier of

fact is entitled to consider on the issue of intent. *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961). A defendant is entitled to an instruction concerning the advice of counsel if it has some foundation in the evidence. *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987). In order to assert advice of counsel, a defendant must have made a full disclosure of all material facts to his or her attorney, received advice as to the specific course of conduct that he or she followed, and relied on the advice in good faith. *Id.*

### E.    Jury Nullification

"Jury nullification" is the concept that a jury has the right to ignore a judge's instructions on the law, if it feels the law is unjust, and acquit the defendant even if the government has proven guilt beyond a reasonable doubt. *See Bushell's Case*, 124 Eng. Rep. 1006 (C.P.1670) (releasing jury foreman Bushell, who was arrested for voting to acquit William Penn of unlawful assembly against the weight of the evidence and the requirements of the law). *See also Horning v. District of Columbia*, 254 U.S. 135, 138 (1920) (recognizing jury's ability to acquit "in the teeth of both law and facts").

"Importantly, while jurors have the *power* to nullify a verdict, they have no *right* to do so." *Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005) (upholding excusing for cause of juror whose admitted belief in nullification would have prevented him from following the law as instructed by the court)(emphasis added). Therefore, the defendant has no right to a jury nullification instruction. *Id.*

*See also United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992); *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988) (upholding court's response to jury's inquiry about meaning of "jury nullification" that "[t]here is no such thing as valid jury nullification. Your obligation is to follow the instructions of the court as to the law given to you").

The Court should order the defendant to refrain from mentioning or otherwise raiding the issue of nullification in front of the jury during the trial. Any attempt by Back to do so should be treated as a contempt of court, and should initiate reconsideration of his ability to continue with self-representation in light of his inability to follow the instructions of the Court. *See Illinois v. Allen*, 397 U.S. 1057 (1970)(upholding removal of disruptive pro se defendant from courtroom during trial).

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Allen*, 397 U.S. at 343.

*See also Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (a judge "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct").

## VI.   ISSUES REGARDING *PRO SE* REPRESENTATION

### A.   Continuance on Eve of Trial is not Required

If the defendant changes his mind about self-representation on the eve of trial and either requests standby counsel to take over or seeks time to find other representation, a continuance is not guaranteed.  Broad discretion is granted to the trial courts when granting or denying continuances.  *Morris v. Slappy*, 461 U.S. 1, 11 (1983).  A court need not find a compelling reason to either grant or deny a continuance.  *United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999)(en banc).  In *Garrett*, the court held that the trial judge did not abuse her discretion in denying a continuance on the eve of trial.  *Id*.  The opinion describes the lengthy pretrial proceedings, and the warnings provided by the trial judge about the dangers of self-representation.  *Id*. at 1145-46.  The court commented on "the care and patience" exercised by the trial judge during the pendency of the case.  *Id*. at 1145. See also *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979)(denial proper where defendant has engaged in dilatory course of conduct).

"When sixth amendment rights to counsel come into conflict with the trial judge's discretionary power to deny continuances, courts apply a balancing of several factors to determine if the trial judge's action was fair and reasonable."  *Id*. (collecting cases).  "Among the considerations are: the inconvenience to the witnesses, court, counsel and parties; have other continuances been granted; is the

request for a delay based on legitimate reasons; is the delay defendant's fault; will denial of the continuance prejudice the defendant." *Id*.

### B. Defendant Cannot Testify from the Podium or Through Arguments with or Statements to Witnesses

The defendant may attempt to place his defense before the jury without actually testifying from the witness stand and subjecting himself to cross-examination. While he has the absolute right to either testify or not testify, he cannot, while acting as his own attorney, present his case through argument or by arguing with witnesses. The jury must decide the case based on the evidence before it, and neither the questions or counsel nor their opening or closing statements are evidence. See Ninth Circuit Model Jury Instructions 1.4, 3.7.

"A jury's exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Raley v. Ylst*, 470 F.3d 792, 803 (9th Cir.2006) (citing *Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir.1995)).

Supplemental instructions to the jury may be proper when counsel's arguments to the jury are legally erroneous or inflammatory. *See United States v. Blixt*, 548 F.3d 882, 890 (9th Cir.2008).

## VII.  CONCLUSION

The United States reserves the opportunity to file additional briefing if other

issues arise either before or during trial.


      RESPECTFULLY submitted this 22nd day of September, 2014, at

Anchorage, Alaska.

                    KAREN L. LOEFFLER
                    United States Attorney

                    s/ Thomas C. Bradley
                    THOMAS C. BRADLEY
                    Assistant U.S. Attorney
                    United States of America


**CERTIFICATE OF SERVICE**
I hereby certify that on September 22, 2014
a true and correct copy of the foregoing
was served electronically on:

Jamie McGrady
James Back

s/ Thomas C. Bradley
Office of the U.S. Attorney

Case 3:14-cr-00020-RRB   Document 77   Filed 09/22/14   Page 24 of 24